DECISION
{¶ 1} Relator, Dorothy Finucan, has filed this original action seeking a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying her application for permanent total disability ("PTD") compensation, and to enter an order granting said compensation. *Page 2 
 {¶ 2} Pursuant to Civ.R. 53 and Loc.R. 12(M) of the Tenth District Court of Appeals, we referred the matter to a magistrate, who has rendered a decision and recommendation (attached as Appendix A) including findings of fact and conclusions of law, recommending that the court issue the requested writ. The commission has filed objections to the magistrate's decision, and the matter is now before the court for an independent review. For the reasons set forth below, we sustain the commission's objections, do not adopt the pertinent aspects of the magistrate's findings of fact and conclusions of law, and deny the requested writ.
 {¶ 3} Relator fell and injured her spine on May 13, 1997, during the course and scope of her employment for respondent, Finucan Chiropractic Inc. She then underwent a cervical discectomy and fusion. Her workers' compensation claim was subsequently allowed for this injury.
 {¶ 4} On March 24, 2006, relator filed her application for PTD compensation based upon the assessment and report of her examining physician, Dr. Michael Kramer, and the report by her husband, Joseph Finucan, a chiropractor.
 {¶ 5} After examination, the commission's physician, Dr. Ron M. Koppenhoefer, concluded that relator had suffered a 25 percent whole-person impairment and could engage in sedentary-work activity with proper body ergonomics. He also imposed additional restrictions against rotational movements and prolonged static position of the cervical spine.
 {¶ 6} A vocational report by psychologist Jennifer J. Stoeckel, Ph.D., concluded that relator was permanently and totally disabled due to her need to constantly change *Page 3 
position while working, and because there were no jobs available in the labor market that could accommodate the restrictions imposed by Dr. Koppenhoefer.
 {¶ 7} The commission's staff hearing officer ("SHO") found that relator would be able to engage in sedentary work based upon the report of Dr. Koppenhoefer. The SHO further found that relator's condition had reached maximum medical improvement and that her age, education, and functional skills did not preclude her return to the workforce in a sedentary position. The SHO accordingly denied PTD compensation.
 {¶ 8} The magistrate has recommended that this court issue a writ of mandamus because the SHO had failed to determine whether suitable jobs existed in the job market where relator might find appropriate sedentary employment. The commission has objected to the magistrate's report on the basis that the commission is not required to provide in its order specific jobs that a claimant could perform within his or her established limitations, i.e., the commission is "generally not required to enumerate the jobs of which it believes claimant to be capable,"State ex rel. Mann v. Indus. Comm. (1998), 80 Ohio St.3d 656, 659. "The issue is not whether a job is actually available, particularly within a specific geographical area, but whether the claimant is reasonably qualified for sustained remunerative employment." State ex rel Speelmanv. Indus. Com. (1992), 73 Ohio App. 3d 757, 763.
 {¶ 9} The commission's objections to the magistrate's decision are well-taken and will be sustained. Based upon Speelman, Mann, and multiple decisions of this court following this precedent, we again find in this case that the commission is not obligated to suggest specifically which occupations the claimant can perform, or whether these *Page 4 
occupations are widely available locally. See, e.g., State ex rel.Campbell v. Indus. Comm. (Nov. 26, 1996), Franklin App. No. 96AP-303, (Memorandum Decision):
 "* * * relator asserts that the commission should take into consideration the extreme scarcity of the type of employment for which relator is hypothetically qualified, citing this court's decision in State ex rel. Speelman * * * The holding in Speelman, however, does not support relator's argument, this court having stated that the issue is not whether a job is actually available, but whether the claimant is reasonably qualified for sustained remunerative employment."
Id., Sept. 18, 1996 quoting magistrate's decision.
 {¶ 10} Because we find that the commission's objections to the magistrate's decision in this matter are well-taken, we do not adopt the magistrate's recommendation that a writ issue and accordingly deny the writ.
Writ denied.
BROWN and FRENCH, JJ., concur.
DESHLER, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution. *Page 5 
 APPENDIX A MAGISTRATE'S DECISION Rendered on November 13, 2007 {¶ 11} In this original action, relator, Dorothy Finucan, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying her permanent total disability ("PTD") compensation, and to enter an order granting said compensation. *Page 6 
Findings of Fact: {¶ 12} 1. On May 13, 1997, relator sustained an industrial injury while employed as a chiropractic assistant at Finucan Chiropractic Inc., a state-fund employer. The industrial claim is allowed for "C4-C5 herniated disc; C5-C6 post disc protrusion and disc herniation at C6-7 with associated facet arthropathy," and is assigned claim number 97-396881.
 {¶ 13} 2. On March 24, 2006, relator filed an application for PTD compensation.
 {¶ 14} 3. On May 12, 2006, relator was examined at the commission's request, by Ron M. Koppenhoefer, M.D. In his narrative report, Dr. Koppenhoefer wrote:
 Ms. Finucan is a 55 year-old, right-handed female who was examined on May 12, 2006 for an injury which occurred on May 13, 1997. At the time of her injury she was working as a chiropractic assistant which required her to do office work as well as treatment modalities. She states the office was moving and she was carrying files down steps on top of a box. The box slipped and she lost her footing which caused her to miss several steps and caused her to fall. Almost immediately she developed pain involving the neck with radiation to the left shoulder. She also indicates she had numbness involving the left fourth/fifth fingers.
 Because of her pain she underwent surgery on May 19, 1997 by Dr. Michael Kramer. The surgery was anterior cervical fusion at the C4-5 level. Since that time she has had chiropractic treatments and still goes on a 3-4x/week basis. She no longer gets adjustments. In addition, she gets massage treatment 3-4x/year and occasionally on a frequent basis if she has a flare up.
 The only medication she takes is over-the-counter ibuprofen 200 mg. On good days she takes 3-4 tablets, on bad days she takes up to 12. She indicates she has more bad then good days.
 * * * *Page 7 
 She describes her current neck pain as a throbbing pain involving the cervical area with radiation to the occipital portion of her skull. The pain also involves the left shoulder primarily in the left upper trapezius area. Her pain is aggravated by damp, cold weather which she describes as being 40°. The act of lifting from the floor makes the pain worse and it is accentuated by lifting weights 10 lb. or greater. Cervical extension also aggravates her discomfort. Left lateral bending is limited and also causes her discomfort. The pain can radiate into the left upper arm. This radiation occurs 3-4x/month and can last for one day when she takes her ibuprofen. She indicates that the only numbness and tingling she has is involving her left fourth/fifth fingers and has been constant since her fall.
 * * *
 She is independent in driving and does light household activities. She is also independent in bathing/dressing activities.
 It is noted that she was able to work full time until the last 1 ½ years and then went to part-time status. She states she stopped working in November 2005.
 Her physical examination revealed her height to be 5 ft., weight 173 lb. Her gait was stable. Transitional activities were done effortlessly. Examination of the spine revealed normal alignment. Motion involving the lumbosacral spine was full with normal lumbopelvic rhythm. Motion involving the cervical spine showed limitations. Flexion was limited to 40°, extension 15°, both of which were limited by pain. Left lateral bending rotation was limited to 40° because of pain and mild tightness in the chondrolateral musculature. Palpation of the cervical paraspinal musculature revealed mild discomfort on the left and no classical trigger points or spasm was noted. Palpation of the greater occipital nerve caused no discomfort. Spurling sign was abnormal on the left with reproduction of her symptoms. Motion involving the glenohumeral joints was full in active and passive basis with normal scapular humeral rhythm. No winging of the scapular was noted. Palpation of the shoulder girdle revealed no evidence of discomfort. Resisted motions of the gleno-humeral joints showed no discomfort. Examination of the elbows, wrists, and hands was unremarkable. [F]ull active and passive range was noted. Neurological exam of the *Page 8 
upper extremities revealed reflexes to be symmetric, sensation was grossly intact to fine touch except for a slight decrease involving the left fourth/fifth fingers, and manual muscle testing revealed normal strength and was reliable. Grip strength testing on the right was 28 kg, left 20 kg on repeated testing. Left was limited because of left neck discomfort. Muscle tone was normal. No fasciculations were found. * * *
 * * *
 Based on my examination and review of the medical records, I believe Ms. Finucan has reached maximum medical improvement for the allowed conditions of this claim in regards to conservative management. It is noted that her last note by Dr. Michael Kramer indicates that she is not a surgical candidate at this time.
 When taking into effect the allowed conditions of this claim and using The AMA Guides, 5th edition, she would have a DRE cervical category IV degree of impairment or a 25% impairment to the body as a whole.
 Based on my examination, I believe her physical strength rating limits are to sedentary work activities with proper body ergonomies. She should avoid extension, rotational movements of her cervical spine, and be able to change her work station at will. She should also be able to change her position at will for comfort purposes. Prolonged static position of the cervical spine would be counter indicated as well as rotational movements or cervical extension.
 {¶ 15} 4. On May 12, 2006, Dr. Koppenhoefer completed a physical strength rating form. On the form, Dr. Koppenhoefer indicated by checkmark that relator is capable of sedentary work which is defined on the form as follows:
 Sedentary work means exerting up to ten pounds of force occasionally (occasionally: activity or condition exits up to one-third of the time) and/or a negligible amount of force frequently (frequently: activity or condition exists from one-third to two-thirds of the time) to lift, carry, push, pull or otherwise move objects. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and *Page 9 
standing are required only occasionally and all other sedentary criteria are met.
 {¶ 16} 5. In support of her PTD application, relator submitted a vocational assessment ("report") dated July 12, 2006 from psychologist Jennifer J. Stoeckel, Ph.D. Dr. Stoeckel opined:
 Based upon the results of my examination and the information provided/reviewed, Ms. Finucan would be considered permanently and totally disabled. Briefly, Ms. Finucan suffered a significant work related injury in 1997 which required immediate cervical fusion. Post-injury and surgery Ms. Finucan returned to competitive employment through November of 2005 but had escalating problems with her neck. She noted she was absent frequently due to pain and severe headaches. Both Drs. Kramer and Finucan have opined Ms. Finucan would be considered permanently and totally disabled based upon her allowed conditions. Dr. Koppenhoefer examined Ms. Finucan for the Industrial Commission and restricted her to sedentary employment but noted that she would have to use proper body ergonomics, should be able to change her work station at will, cannot endure prolonged static position of the cervical spine, or any rotational movements. Frankly, I do not know of any jobs that exist that would not require some sort of cervical movement as restricted by Dr. Koppenhoeffer. While Ms. Finucan has many positive vocational characteristics in that she has a higher education, has worked in a skilled position, and demonstrates average intellectual, academic, and vocational functioning on formal testing, her injury is such that it would preclude even a full range of sedentary work activity. It is noteworthy Ms. Finucan had been in a position where she could change her position at will "but I was moving around more than I was doing my work." Again, unfortunately, there are no job positions in the labor market that could accommodate the restrictions reported by Dr. Koppenhoefer. Ms. Finucan's past employment approximated those restrictions and yet was too physically demanding. Summarily, within reasonable vocational certainty, Ms. Finucan presents as permanently and totally disabled given her allowed conditions and residual impairment. *Page 10 
 {¶ 17} 6. Following a July 21, 2006 hearing, a staff hearing officer ("SHO") issued an order denying the PTD application. The SHO's order states:
 The injured worker was examined at the request of the Industrial Commission on 05/12/2006 by Dr. R. Koppenhoefer. Dr. Koppenhoefer indicated that the injured worker has reached maximum medical improvement for the allowed conditions in the claim and he noted that Dr. Kramer indicated that the injured worker is not a surgical candidate at this time. He concluded that the injured worker has a 25 % whole person impairment rating.
 Dr. Koppenhoefer concluded that the injured worker could engage in sedentary work activity with proper body ergonomics. He indicated that the injured worker should avoid extension, rotational movements of her cervical spine and be able to change her work station at will. She should be able to change her position at will for comfort purposes. He stated that prolonged static position of the cervical spine would be counter indicated as well as rotational movements or cervical extension.
 The Hearing Officer finds that the injured worker would be able to engage in sedentary work activity based upon the report of Dr. Koppenhoefer dated 05/16/2006. The Hearing Officer finds that the injured worker would be able to engage in sedentary work activities with proper body ergonomics. Dr. Koppenhoefer noted that there are restrictions with regard to extension, and rotational movements of the cervical spine as well as static positioning of the cervical spine. The Hearing Officer finds that the restrictions noted by Dr. Koppenhoefer do not preclude the injured worker from engaging in sedentary work activity.
 The Hearing Officer finds that the injured worker's condition has reached maximum medical improvement.
 The Hearing Officer has reviewed and evaluated the vocational report which was completed at the injured worker's request by Dr. Stoeckel dated 07/12/2006. Dr. Stoeckel administered the WRAT-3 test to the injured worker which demonstrated that the injured worker has a 9th
grade level for reading, a 12th
grade level for spelling and a 10th grade level for math computation. The injured worker had a full scale I.Q. of 102 and it was determined based upon *Page 11 
testing that the injured worker does not evidence any significant academic deficiencies. Formal testing indicated that the injured worker had average intellectual, academic and vocational functioning.
 The Hearing Officer finds that the injured worker is 55 years of age, has a high school education and attended the University of Cincinnati for two years and took physical therapy courses.
 Testing indicates that the injured worker has average to above average academic skills and it did not evidence any significant academic deficiencies.
 The injured worker's past work experience has been as a chiropractic assistant and as a rental accountant for Ryder Truck.
 The injured worker's past work experience has involved working on a computer, completing insurance forms, doing general office work and has involved patient care therapy including operating electrical stimulation and ultrasounds machines. The injured worker has filled out charts, insurance forms, and reports and has operated general office equipment including computers, copiers and fax machines.
 The Hearing Officer finds that the injured worker's age of 55 does not preclude the injured worker from returning to the workforce or engaging and retraining to return to the workforce in a sedentary position. The Hearing Officer finds that the injured worker's age of 55 does not preclude the injured worker from competing against younger workers for sedentary employment positions.
 The Hearing Officer finds that that injured worker's educational level is more than sufficient in order for the injured worker to return to sedentary work activity or engage in retraining necessary to return to the workforce.
 The injured worker's past work experience as a chiropractic assistant and as a rental accountant for a trucking firm indicates that the injured worker has a number of skills including the ability to complete forms, work on a computer, engage in general office work and run an office. The Hearing Officer finds that the injured worker's past work experience is a positive factor with regard to the injured worker engaging *Page 12 
in sedentary work activity. The Hearing Officer further finds that the injured worker's past work history has been skilled in nature and would be a benefit to the injured worker engaging in any retraining which may be necessary to engage in entry level or other types of sedentary work activity.
 Based upon the injured worker's age, education and work experience the Hearing Officer finds that the injured worker would [be] able to engage and sustain remunerative work activity and is not permanently and totally disabled.
 {¶ 18} 7. On May 10, 2007, relator, Dorothy Finucan, filed this mandamus action.
Conclusions of Law: {¶ 19} It is the magistrate's decision that this court issue a writ of mandamus, as more fully explained below.
 {¶ 20} In State ex rel. Libecap v. Indus. Comm. (Sept. 5, 1996), Franklin App. No. 96APD01-29, affirmed, 83 Ohio St.3d 178,1998-Ohio-120, Dr. Littlefield opined that claimant, Betty J. Libecap," [']would not be able to lift more than 5 or 10 pounds and would have difficulty in any occupation that would involve sitting or standing formore than 30 minutes. Frequent breaks and allowing the claimant to change positions would be required. Repetitive activities would not be tolerated in the upper extremities.' (Emphasis added.)"
 {¶ 21} Following a hearing on Libecap's PTD application, the commission found her capable of sedentary work which is defined by Ohio Adm. Code 4121-3-34(B)(2)(a):
 "Sedentary work" means exerting up to ten pounds of force occasionally (occasionally: activity or condition exists up to one-third of the time) and/or a negligible amount of force frequently (frequently: activity or condition exists from one-third to two-thirds of the time) to lift, carry, push, pull, or otherwise move objects. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and *Page 13 
standing are required only occasionally and all other sedentary criteria are met.
 {¶ 22} In Libecap, this court held that it did "not view Dr. Littlefield's limitations as consistent with sedentary work." Consequently, this court issued a limited writ of mandamus compelling the commission to enter a new order either granting or denying the compensation with an appropriate explanation of the commission's decision.
 {¶ 23} Subsequently, the Libecap case has been the focus of mandamus cases involving the commission's determination of a PTD application.
 {¶ 24} In State ex rel. Howard v. Millennium Inorganic Chemicals, Franklin App. No. 03AP-637, 2004-Ohio-6603, this court issued a limited writ of mandamus compelling the commission to vacate an order denying PTD compensation. In Howard, the issue before this court was whether Dr. Dobrowski's report supported the commission's decision that claimant, Robert L. Howard, was medically able to perform sedentary work. InHoward, this court stated:
 Respondents argue that Dr. Dobrowski's report in the present case contains no inconsistencies of the type we deemed problematic in Libecap. They note that Dr. Dobrowski concluded that relator is capable of performing sedentary work, and identified no restrictions that are inconsistent or incompatible with that type of work. They argue that the magistrate impermissibly reweighed the evidence and substituted her judgment for that of the commission.
 Libecap has been cited for the proposition that, "where a physician places the claimant generally in the sedentary category but has set forth functional capacities so limited that no sedentary work is really feasible * * * then the commission does not have discretion to conclude based on that report that the claimant can perform sustained remunerative work of a sedentary nature." State ex rel. Owens Corning Fiberglass v. Indus. Comm., 10th
Dist. No. 03AP-684, 2004-Ohio-3841, ¶ 56. The "commission cannot *Page 14 
simply rely on a physician's `bottom line' identification of an exertional category but must base its decision on the specific restrictions imposed by the physician in the body of the report." The court in Owens Corning went on to explain:
 In Libecap, the problem was not that the doctor's report was defective because claimant was placed in the sedentary category. Doctors may be unaware of legal criteria and the doctor in that case had set forth clear and unambiguous functional restrictions in his discussion that would permit short periods of sedentary activity. Rather, the problem was with the commission's finding of capacity for sedentary, sustained remunerative employment based on a report that, read in its entirety, clearly precluded sustained remunerative employment of a sedentary nature.
 Conversely, where a physician's checklist states that the claimant is medically precluded from performing any sustained remunerative employment but where the narrative report, read in its entirety, clearly and unambiguously sets forth a capacity for sustained remunerative employment, then the commission lacks discretion to rely on that report for a finding of medical inability to perform any sustained remunerative employment.
 Id. at ¶ 56-57. (Emphasis sic.)
 "[F]unctional abilities may be so limited that only brief periods of work activities would be possible, which would not constitute sustained remunerative employment. * * * [That is,] regardless of the fact that the physician placed claimant in the `sedentary' category, the specific restrictions [may be] so narrow as to preclude sustained remunerative employment." State ex rel. Clevite Elastomers v. Torok, 10th Dist. No. 02AP-116, 2002-Ohio-4770, ¶ 14.
 The magistrate in the present case determined that the medical limitations set forth in Dr. Dobrowski's narrative report were narrow enough so as to preclude relator from performing any sustained remunerative employment. We agree with the magistrate inasmuch as the restriction-related findings contained in Dr. Dobrowski's report seem inconsistent with the possibility of relator maintaining sustained remunerative employment. Dr. Dobrowski noted that relator's inability to maintain a voice loud enough to be heard over normal conversation and background noise would make it *Page 15 
"very difficult [for relator] to maintain any type of communication with any fellow workers." He noted that relator's voice "tires rapidly and tends to become inaudible after a few seconds to minutes." He also found that relator's shortness of breath (dyspnea) is "aggravated by performance of any unusual activities of daily living beyond personal cleansing, grooming or equivalent." Finally, Dr. Dobrowski opined that relator's whole person impairment is equivalent to "eighty percent using the strictest criteria and could easily be elevated to ninety percent based on the physical characteristics of obstructed air passage defect."
 We take note of the fact that Dr. Dobrowski opined that, from a medical standpoint, relator had suffered a nearly 100 percent whole person impairment as a result of the allowed conditions in his claim. This is not akin to a finding that relator is or is not capable of sustained remunerative employment. It is for the commission to make this deter-mination-which is a determination as to disability as opposed to impairment-based upon the evidence. See State ex rel. Woods v. Indus. Comm. (1990), 50 Ohio St.3d 227, 229, 553 N.E.2d 665 (holding that for purposes of a permanent total disability determination, examining physicians are confined to the question of medical impairment, i.e., loss of anatomical and/or mental function, while the question of disability is one solely for the commission.) We share the magistrate's view that the commission abused its discretion in denying relator's PTD application, based upon Dr. Dobrowski's report, without adequately resolving the apparent inconsistency between the medical restrictions contained in that report and the concept of the ability to maintain sustained remunerative employment.
Id. at ¶ 8-12. (Emphasis sic.)
 {¶ 25} Here, the problem lies with the SHO's failure to determine whether there exists in the local economy sufficient sedentary jobs that meet Dr. Koppenhoefer's restrictions such that relator can be reasonably expected to obtain one of those jobs. That relator's age, education and work history qualify her for sedentary employment was not the critical issue. However, the SHO's analysis focuses exclusively upon age, education, work history and Dr. Stoeckel's testing in determining that relator is able to *Page 16 
engage in sedentary employment. Under the circumstances here, the SHO's nonmedical analysis is insufficient.
 {¶ 26} Relator may indeed be well qualified vocationally for sedentary employment. However, her problem is that she must "avoid extension, rotational movements of her cervical spine, and be able to change her work station at will." The commission has not told us whether such a job exists in the job market where relator might look for employment.
 {¶ 27} Accordingly, it is the magistrate's decision that this court issue a writ of mandamus ordering the commission to vacate its SHO's order of July 21, 2006, and, in a manner consistent with this magistrate's decision, enter a new order either granting or denying relator's PTD application.
 KENNETH W. MACKE MAGISTRATE *Page 1