[Cite as *State ex rel. Miller v. Indus. Comm.*, 2014-Ohio-1742.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio ex rel.  
Clifford Miller,  
   Relator,  

v.  

Industrial Commission of  
Ohio and Sheedy Paving, Inc.,  

   Respondents.

:

:

:

:

:

:

:

No.  13AP-418

(REGULAR CALENDAR)

D E C I S I O N

Rendered on April 24, 2014

*Agee, Clymer, Mitchell, & Laret,* and *Gregory R. Mitchell*, for relator.

*Michael DeWine*, Attorney General, and *Lydia M. Arko,* for respondent Industrial Commission of Ohio.

IN MANDAMUS  
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

CONNOR, J.

{¶ 1}   Relator, Clifford Miller, brings this original action seeking a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order denying him permanent total disability ("PTD") compensation, and to find that he is entitled to that compensation.

{¶ 2}   Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate, who has now rendered a decision and recommendation that includes findings of fact and conclusions of law and is appended to this decision. The magistrate concluded that the commission did not abuse its discretion and recommended that this court not issue the requested writ of mandamus. Relator has

filed objections to the magistrate's decision, and the matter is now before us for our independent review.

{¶ 3} As reflected in the facts given in the magistrate's decision, claimant was involved in a work-related injury in 2002 and involved in another work-related injury in 2004. Claimant's industrial claims have been allowed for the following conditions: sprain left foot, sprain right shoulder, tear rotator cuff, superior glenoid labrum lesions (SLAP), right rotator cuff syndrome, right biceps tendon rupture, right adhesive capsulitis shoulder, and depressive disorder.

{¶ 4} Relator filed his first application for PTD compensation on July 2, 2009. Following a hearing before a staff hearing officer ("SHO") on December 1, 2009, relator's first application for PTD compensation was denied.

{¶ 5} Relator filed his second application for PTD compensation on April 4, 2012. Brian E. Higgins, D.O., performed an independent medical examination of relator on May 16, 2012. Dr. Higgins concluded that relator could perform "sedentary work," noting that relator "may lift up to 5 pounds with his right upper extremity with no repetitive activities to the right upper extremity," and that relator should sit most of the time, but that he could "walk for a brief period of time." (Stip.R., 20.)

{¶ 6} Relator's second application for PTD compensation came before an SHO for a hearing on July 31, 2012. The SHO relied on medical reports from Dr. Higgins and from Michael A. Murphy, Ph.D., to conclude that relator was capable of performing sedentary-type work. The SHO also discussed and reviewed the non-medical disability factors. Finding that relator could perform sedentary work, and that the non-medical disability factors did not prevent relator from performing sustained, remunerative employment, the SHO denied relator's second application for PTD compensation.

{¶ 7} The magistrate determined that the restrictions listed in Dr. Higgins' report were consistent with the definition of sedentary work found in Ohio Adm.Code 4121-3-34(B), and concluded that relator's reliance on *State ex rel. Soto v. Indus. Comm.*, 69 Ohio St.3d 146 (1994), was misplaced. Relator presents the following objections to the magistrate's decision:

> **Objection 1: The Magistrate's Decision errs by improperly interpreting OAC 4121-3-34(B)(2)(a).**

**Objection 2: The Magistrate's Decision errs in failing to follow the Supreme Court's decision in State ex rel. Soto v. Indus. Comm'n, 69 Ohio St.3d 146 (1994).**

{¶ 8} Pursuant to Civ.R. 53(D)(4)(d), we undertake an independent review of the objected matters "to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law." A relator seeking a writ of mandamus must establish: " '(1) a clear legal right to the relief prayed for, (2) a clear legal duty upon respondent to perform the act requested, and (3) that relator has no plain and adequate remedy in the ordinary course of the law.' " *Kinsey v. Bd. of Trustees of the Police & Firemen's Disability & Pension Fund of Ohio*, 49 Ohio St.3d 224, 225 (1990), quoting *State ex rel. Consolidated Rail Corp. v. Gorman*, 70 Ohio St.2d 274, 275 (1982). "A clear legal right exists where the [commission] abuses its discretion by entering an order which is not supported by 'some evidence.' " *Id.*

{¶ 9} This court will not determine that the commission abused its discretion when there is some evidence in the record to support the commission's finding. *State ex rel. Rouch v. Eagle Tool & Mach. Co.*, 26 Ohio St.3d 197, 198 (1986). The some evidence standard "reflects the established principle that the commission is in the best position to determine the weight and credibility of the evidence and disputed facts." *State ex rel. Woolum v. Indus. Comm.*, 10th Dist. No. 02AP-780, 2003-Ohio-3336, ¶ 4, citing *State ex rel. Pavis v. Gen. Motors Corp., B.O.C. Group*, 65 Ohio St.3d 30, 33 (1992).

{¶ 10} The relevant inquiry in a determination of PTD is the claimant's ability to do any sustained remunerative employment. *State ex rel. Domjancic v. Indus. Comm.*, 69 Ohio St.3d 693 (1994); Ohio Adm.Code 4121-3-34(B)(1). An individual can engage in sustained remunerative employment if they can perform sedentary work.

{¶ 11} In his first objection, relator asserts that the magistrate erred by finding that the restrictions listed in Dr. Higgins' report allowed relator to perform sedentary work. Ohio Adm.Code 4121-3-34(B)(2)(a) defines sedentary work as follows:

> "Sedentary work" means exerting up to ten pounds of force occasionally (occasionally: activity or condition exists up to one-third of the time) and/or a negligible amount of force frequently (frequently: activity or condition exists from one-third to two-thirds of the time) to lift, carry, push, pull, or

> otherwise move objects. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.

{¶ 12} Relator asserts that, because Dr. Higgins restricted relator to lifting up to five pounds with right upper extremity, that "five pound weight restriction removes Relator from the first test for sedentary work that an injured worker be able to exert, at a minimum, ten pounds of force." (Relator's Objections to Magistrate's Decision, 6.) We disagree. "[T]he ten-pound restriction is a 'ceiling' not a 'floor.' " *State ex rel. Petermann L.L.C. v. Ragle*, 10th Dist. No. 11AP-556, 2012-Ohio-5659, ¶ 9. Accordingly, "the definition of 'sedentary' does not require an employee to be able to lift ten pounds to fit within that definition; rather, any ability to exert force below the ten-pound threshold would fit within the definition of 'sedentary.' " *Id.* Relator's ability to lift up to five pounds with his right upper extremity demonstrates that he is capable of performing sedentary work.

{¶ 13} Relator further asserts that "Dr. Higgins silence in regard to the *frequency* of Mr. Miller's ability to lift the five pounds precludes a conclusion that sedentary work as defined in OAC 4121-3-34(B)(2)(a) can be performed." (Emphasis sic.) (Relator's Objections to Magistrate's Decision, 6.) We disagree. In *Petermann L.L.C.,* the doctor restricted the injured worker from lifting or carrying weight greater than five pounds. We noted that the doctor did not restrict or prohibit the "claimant from exerting a negligible amount of force frequently which, under the definition, is an alternative basis for finding a capacity for sedentary work." *Id.* at ¶ 68. Similarly, here, as Dr. Higgins did not restrict relator from exerting a negligible amount of force frequently, we find that his report permits relator to engage in that conduct. *See also State ex rel. Nicholson v. Indus. Comm.,* 10th Dist. No. 11AP-436, 2012-Ohio-3438, ¶ 33 (finding that "even with the left-hand limitation of five pounds of grip and pinch, relator is fully capable of exerting a negligible amount of force frequently with either hand").

{¶ 14} Relator contends that Dr. Higgins' restriction against repetitive activities equates to a finding that relator cannot exert a negligible amount of force frequently. Again, we disagree. A doctor's order precluding an injured worker from engaging in

repetitive activities does equate to an order that an injured worker cannot exert a negligible amount of force frequently, or that the injured worker cannot otherwise engage in sedentary work. *Compare State ex rel. Steele v. Indus. Comm.*, 10th Dist. No. 04AP-606, 2005-Ohio-4125, ¶ 9, ¶ 16, ¶ 39 (finding a doctor's report was some evidence to support the denial of relator's application for PTD, where the doctor's report stated that relator was "capable of 'sedentary work' provided there is no repetitive use of the upper extremities"); *State ex rel. Johnson v. Perfection Group, Inc.*, 10th Dist. No. 12AP-304, 2013-Ohio-606, ¶ 40 (finding that the restrictions listed in a doctor's report, including the restriction that the injured worker lift no "more than two pounds, [and] that he engage in no repetitive activities," were consistent with the definition of sedentary work).

{¶ 15} Lastly, relator asserts the commission's decision and the magistrate's decision "assume that sedentary jobs exist that could possibly accommodate Mr. Miller, without reference to the existence of a single one." (Relator's Objections to Magistrate's Decision, 8.) The commission, however, "is not obligated to suggest specifically which occupations the claimant can perform, or whether these occupations are widely available locally." *State ex rel. Finucan v. Indus. Comm.*, 10th Dist. No. 07AP-391, 2008-Ohio-1836, ¶ 9.

{¶ 16} Based on the foregoing, relator's first objection to the magistrate's decision is overruled.

{¶ 17} Relator's second objection asserts that the magistrate erred in failing to follow *Soto*. In *Soto,* the Supreme Court of Ohio concluded that Soto's non-medical disability factors precluded him from performing sedentary work. The magistrate herein analyzed *Soto* and determined that *Soto* was distinguishable from the instant case, as the injured worker in *Soto* was literate only in Spanish and ten years older than relator. For the reasons stated in the magistrate's decision, we similarly determine that *Soto* is inapplicable to the instant action. Accordingly, relator's second objection to the magistrate's decision is overruled

{¶ 18} Following independent review, pursuant to Civ.R. 53, we find the magistrate has properly determined the pertinent facts and applied the salient law to them. Accordingly, we adopt the magistrate's decision as our own, including the findings of fact

and conclusions of law contained therein. In accordance with the magistrate's decision, we deny the request for a writ of mandamus.

*Objections overruled;*
*writ denied.*

SADLER, P.J. and TYACK, J., concur.

———————————————

# A P P E N D I X

## IN THE COURT OF APPEALS OF OHIO

### TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio ex rel.<br>Clifford Miller, | : | |
| | : | |
| Relator, | : | No.  13AP-418 |
| | : | |
| v. | : | (REGULAR CALENDAR) |
| | : | |
| Industrial Commission of<br>Ohio and Sheedy Paving, Inc., | : | |
| | | |
| Respondents. | : | |

---

### M A G I S T R A T E ' S   D E C I S I O N

#### Rendered on November 7, 2013

---

*Agee, Clymer, Mitchell, & Laret,* and *Gregory R. Mitchell*, for relator.

*Michael DeWine*, Attorney General, and *Justine S. Casselle*, for respondent Industrial Commission of Ohio.

---

### IN MANDAMUS

{¶ 19} Relator, Clifford Miller, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied his application for permanent total disability ("PTD") compensation and ordering the commission to find that he is entitled to that compensation.

Findings of Fact:

{¶ 20} 1. Relator has sustained two work-related injuries. The first injury occurred in 2002 and is allowed for: "sprain left foot." The second injury occurred on September 7, 2004 and was originally allowed for the following conditions: "sprain right shoulder; tear right rotator cuff; superior glenoid labrum lesions (SLAP); right rotator cuff syndrome; right biceps tendon rupture; right adhesive capsulitis shoulder."

{¶ 21} 2. Relator's 2004 claim would eventually be additionally allowed for "depressive disorder."

{¶ 22} 3. Relator received temporary total disability ("TTD") compensation for the allowed right shoulder conditions.

{¶ 23} 4. It is undisputed that relator's allowed conditions to his right shoulder have left him with significant permanent restrictions.

{¶ 24} 5. A 90-day evaluation was conducted by James H. Rutherford, M.D. In his April 6, 2009 report, Dr. Rutherford identified the allowed shoulder conditions in relator's claim, discussed the medical history, provided his physical findings upon examination, concluded that relator's allowed physical conditions had reached maximum medical improvement ("MMI"), and noted the following limitations:

> [C]an only lift up to 2-pounds occasionally with his right upper extremity. He can do no work activity with his right upper extremity. He can do no pushing or pulling with his right upper extremity. He can drive for his own transportation, but he cannot drive heavy equipment. He cannot climb ladders for work activities.

Dr. Rutherford recommended vocational rehabilitation, stating:

> I would recommend a vocational rehabilitation program for Mr. Miller as he still has pain and limitation of motion of his right shoulder, which will prevent him from returning to all the duties of a laborer. It is my opinion that he will most likely permanently be restricted to the functional limitations for work that I have described above in response to question #3. He would thus be an appropriate candidate for vocational rehabilitation, which would appropriately include vocational assessment and a functional capacity evaluation.

{¶ 25} 6. Relator filed his first application for PTD compensation on July 2, 2009.

{¶ 26} 7. An independent medical evaluation was performed by Kenneth A. Writesel, D.O.  In his August 29, 2009 report, Dr. Writesel identified the allowed conditions in relator's claim, discussed his medical treatment, provided his physical findings upon examination, and opined that relator's allowed conditions had reached MMI.  Thereafter, Dr. Writesel opined that relator had a 0 percent whole person impairment for the allowed condition in the 2002 claim (sprain left foot) and a 9 percent whole person impairment based on the allowed shoulder conditions in the 2004 claim. Dr. Writesel opined that relator could perform light-duty work with the following restrictions:

> He should be restricted to using the right upper extremity only as a support or counterforce when using the left upper extremity as the primary work hand. He is most definitely capable of operating controls, ambulating without restriction, as well as sitting or standing without restriction.

{¶ 27} 8. According to the statement of facts prepared when relator filed his application for PTD compensation, his rehabilitation file was closed in May 2009 for the following reasons:  "Closed due to Injured Worker declining services and having nonrelated physical conditions preventing him from participating."

{¶ 28} 9.  Relator's first application for PTD compensation was heard before a staff hearing officer ("SHO") on December 1, 2009 and was denied.

{¶ 29} 10.  The SHO relied on the medical report of Dr. Writesel to find that relator was capable of performing light-duty work with the additional restrictions set forth in Dr. Writesel's report.  Thereafter, the SHO addressed the fact that relator had significant non-allowed conditions and considered the non-medical disability factors to find that relator was not entitled to an award of PTD compensation.  Specifically, the SHO stated:

> The Injured Worker is 54-years-old. Under Industrial Commission guidelines, this is a person of middle age. This is an age which can be expected to, but only slightly interfere with adapting to a new work environment. This Staff Hearing Officer finds the Injured Worker's age to be a neutral factor in evaluating his re-employment potential.
>
> The Injured Worker has a sixth grade education, which ended because of family circumstances. The Injured Worker reports that he is able to read, write and do basic math, but

not well. His work experience is limited to manual labor which would not provide skills transferable to other, lighter work. This Staff Hearing Officer finds the Injured Worker's education and work experience to be a somewhat negative factor in evaluating his re-employment potential.

The Injured Worker's industrial injuries provide limitations which are limited to his dominant upper extremity. The independent examination concluded that the Injured Worker is capable of performing light work, but very little work involving his dominant upper extremity.

Permanent total disability compensation is properly awarded solely on the basis of allowed industrial injuries. The Injured Worker has significant non-industrial physical limitations, notably lower back conditions and gout. These are not proper considerations, either to award or deny, permanent total disability compensation.

The application for permanent total disability compensation is denied. When consideration is limited to allowed injuries, the Injured Worker has not lost the entirety of his capacity to engage in sustained remunerative employment. An individual who has the ability, with restriction, to sit, stand, walk, or use his non-dominant upper extremity retains the capacity to engage in several types of employment, even when consideration is given to the Injured Worker's educational deficit. Examples of such work would include monitoring-type security positions, making change, inspector-type positions which did not require extensive fine manipulation, and generally other positions which did not require extensive use of the dominant upper extremity.

Limiting consideration to allowed industrial injuries, the Injured Worker has failed to demonstrate that he has lost the entirety of his capacity to engage in sustained remunerative employment.

{¶ 30} 11. After relator's first application for PTD compensation was denied, his claim was additionally allowed for the psychological condition of depressive disorder.

{¶ 31} 12. Relator's rehabilitation file was closed the second time in October 2011 for the following reasons: "Closed due to Injured Worker proceeding with permanent total disability and treatment for chronic pain management."

{¶ 32} 13. Relator filed his second application for PTD compensation on April 4, 2012. According to his application, relator was 57 years of age and last worked in December 2007. Relator was receiving Social Security Disability benefits. Relator completed the 6th grade, did not graduate from high school and did not receive his GED. Relator also did not attend trade or vocational school. Relator indicated that he could read, write, and perform basic math; however, not well. Relator also indicated that he had not participated in rehabilitation services.

{¶ 33} 14. In support of his application, relator submitted the December 15, 2011 report of Raymond D. Richetta, Ph.D. According to Dr. Richetta, relator suffered mild to moderate impairment in activities of daily living, moderate impairment in concentration, persistence, and pace, mild to moderate impairment in social functioning and at least a moderate impairment in adaptation to stress and work/work-like settings due to the allowed psychological condition alone. Dr. Richetta also noted that relator was generally very unmotivated and that shifting from low activity level to a work-like schedule was likely to challenge his ability to manage stress. Dr. Richetta opined that relator could not maintain a regular workday due to his insomnia, had reduced concentration, would have difficulty carrying out more than very simple work directives, and that it was unlikely that he could muster the consistent energy to sustain attendance at a job, let alone cope with job demands. Dr. Richetta concluded that relator was permanently and totally disabled due solely to the allowed psychological condition.

{¶ 34} 15. Relator also submitted the February 7, 2012 report of Nancy Renneker, M.D. Dr. Renneker noted the allowed conditions in relator's claim and discussed the medical records which she reviewed. Thereafter, Dr. Renneker noted relator's present complaints, provided her physical findings upon examination, listed the following restrictions and concluded that relator was unable to perform at a sedentary work level:

> Clifford R. Miller has the following permanent job restrictions related to this injury of 9-07-2004: (1) no use of right upper extremity for any task (2) no crawling, no climbing, no 2 handed jobs, and no steadying of an object/weight with right arm and (3) Clifford R. Miller is able to occasionally lit in his left hand and carry a distance of 20 to 30 yards on an occasional basis [a]n object weighing up to 7 lbs. Clifford R. Miller is unable to perform at a sedentary

level due to residual physical impairments and it is my medical opinion that Clifford R. Miller is permanently and totally disabled from performing sustained remunerative employment due to his residual impairments related to his work injury of 9-07-2004, (Claim no. 04-401264).

{¶ 35} On her physical capacity evaluation, Dr. Renneker noted that relator could occasionally lift up to five pounds with his left upper extremity only, lift and carry on a frequent basis one to two pounds with his left upper extremity only and that he needed to lie down two times during an eight-hour workday with pillows supporting his right upper extremity. She also noted that relator could occasionally twist, stoop and bend, never crouch, could occasionally climb stairs but that he needed two railings but could only hold on with his left arm, and that he could never use his right upper extremity for reaching, handling, fingering, feeling, pushing and pulling. She also noted that he had to avoid exposure to extreme cold as well as vibration and hazards such as climbing.

{¶ 36} 16. The record also contains a progress note dated January 9, 2012 from the Ohio State University Medical Center. Mary A. Wynd, M.D., indicated that relator's work restrictions would include no use of his right arm.

{¶ 37} 17. Relator also submitted the December 14, 2011 letter from CareWorks informing him that he was not currently ready for vocational rehabilitation as follows:

You have been found non feasible because Medical dated 10/14/11 from Ohio State Medical Center states that you will proceed with permanent total disability and treat for chronic pain management. Also, IME dated 10/20/11 does not recommend Voc Rehab.

{¶ 38} 18. An independent medical examination was conducted by Brian E. Higgins, D.O. In his May 16, 2012 report, Dr. Higgins identified the allowed conditions in relator's claim, identified the medical records which he reviewed, provided his physical findings upon examination, and opined that relator's allowed physical conditions had reached MMI, assessed a 23 percent whole person impairment, and found that relator was capable of performing some sedentary work indicating that he may lift up to five pounds with his right upper extremity with no repetitive activities with the right upper extremity. He noted that most of the time, relator would be sitting but that he would be able to walk for brief periods of time.

{¶ 39} 19. Michael A. Murphy, Ph.D., provided an evaluation dated May 21, 2012. Dr. Murphy noted the allowed psychological condition, discussed relator's treatment and opined that relator had a mild impairment in daily activities, social interactions, and an adaptation. Dr. Murphy did not find any impairment in relator's concentration, persistence, and pace. Dr. Murphy concluded that relator's depression was mild, his executive and cognitive functions were in tact, and his residual functioning was mildly impaired. Ultimately, Dr. Murphy concluded that relator's allowed psychological condition had reached MMI, that he had a class 2 impairment of 12 percent and that he was able to complete a normal workday and work week while maintaining regular attendance from a psychological standpoint. Dr. Murphy concluded that relator was capable of sustained employment.

{¶ 40} 20. Relator's application was heard before an SHO on July 31, 2012 and was denied. The SHO relied on the medical reports of Drs. Higgins and Murphy and concluded that relator would be capable of performing at least limited sedentary work. The SHO noted that relator's prior application had been denied in December 2009 and that his claim was, thereafter, additionally allowed for the psychological condition. The SHO also noted that relator was receiving Social Security Disability benefits and that he had the following unrelated medical problems:

> [G]out, right carpal tunnel syndrome, tremors in his right hand, a heart catheterization, low back problems, and insomnia.

{¶ 41} Thereafter, the SHO discussed the non-medical disability factors. The SHO did find that relator's education and work history were negative factors affecting his ability to become re-employed and that his age of 57 years was a neutral factor. The SHO did note that relator's allowed conditions only restricted him with regard to his right upper extremity and that his unrelated and non-allowed medical conditions could not be used to either advance or hinder consideration of his PTD application. The SHO addressed the non-medical disability factors and concluded that relator was not entitled to an award of PTD compensation, stating:

> Regarding the non-medical disability factors, it is found the Injured Worker is currently age 57. He testifies to completing the 6th grade in school, but failing the 7th, and then

dropping out in order to start working. As a work history, the Injured Worker has performed laboring activities for fence construction companies for approximately 13 years, and he worked for the paving company in this claim for approximately 12 years. It is found that the Injured Worker's age is at this point a neutral factor, but that his education would be seen as a negative factor. His manual work history would indicate that he would not possess job skills transferable to other lighter jobs, and his work history would therefore also be a negative factor. However, it is very relevant to note that physically, this claim involves only the Injured Worker's right shoulder. The remainder of his physical well-being is not affected by this claim. While Dr. Higgins gave an opinion of ability to do limited sedentary work, there was no explanation as far as why the Injured Worker would be limited in his walking activities or in use of his left upper extremity by the allowed conditions. It is also noted that permanent total disability compensation encompasses only physical or psychological restrictions due to the allowed conditions, and that unrelated conditions may not be used to either advance or hinder consideration of permanent total disability.

The Injured Worker has had contact with the rehabilitation division in the past, but these contacts, most recently in December of 2011, were not successful. This is due partly to the limitations provided by his physicians, and also is partially due to the Injured Worker's belief that he is permanently and totally disabled. This belief was stated to Dr. Higgins, and Dr. Richetta in his report of 12/15/2011 also indicated that the Injured Worker is "very unmotivated."

In summary, it is found that the Injured Worker maintains the physical capacity to perform at least sedentary work. As discussed above, there are no physical allowances in this claim for conditions other than his right shoulder, and there is no indication that he could not perform walking activities or activities with his left upper extremity. It is recognized that there has been the additional allowance of the depressive disorder since permanent total disability was last denied in 2009, but he medical evidence from Dr. Murphy, as well as from a prior report dated 10/20/2011 from Dr. Hawkins, does not show there to be further significant functional limitations due to the psychological condition. It is therefore found that, if so inclined and motivated, the Injured Worker does maintain the potential to perform jobs

within the physical capacities specified above. Walking activities would not be limited, and use of the unaffected left upper extremity would likewise not be limited. There is no indication that the Injured Worker could not benefit from on-the-job training. The evidence on file is not found persuasive that the Injured Worker is permanently and totally disabled due to the conditions allowed in these claims, and the request for permanent total disability compensation must therefore be denied.

{¶ 42} 21. Thereafter, relator filed the instant mandamus action in this court.

Conclusions of Law:

{¶ 43} Relator contends that the commission abused its discretion by denying him PTD compensation because the commission's conclusion that he could return to sedentary work contradicts the restrictions given by Dr. Higgins.

{¶ 44} For the reasons that follow, the magistrate disagrees with relator's argument.

{¶ 45} The Supreme Court of Ohio has set forth three requirements which must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law. *State ex rel. Berger v. McMonagle*, 6 Ohio St.3d 28 (1983).

{¶ 46} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987). Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

{¶ 47} The relevant inquiry in a determination of permanent total disability is claimant's ability to do any sustained remunerative employment. *State ex rel. Domjancic v. Indus. Comm.*, 69 Ohio St.3d 693 (1994). Generally, in making this determination, the commission must consider not only medical impairments but also the claimant's age, education, work record and other relevant non-medical factors. *State ex rel. Stephenson v. Indus. Comm.*, 31 Ohio St.3d 167 (1987). Thus, a claimant's medical capacity to work is not dispositive if the claimant's non-medical factors foreclose employability. *State ex rel. Gay v. Mihm*, 68 Ohio St.3d 315 (1994). The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. *State ex rel. Noll v. Indus. Comm.*, 57 Ohio St.3d 203 (1991).

{¶ 48} Ohio Adm.Code 4121-3-34(B) provides, in pertinent part, the following classifications of physical demands of work:

> "Sedentary work" means exerting up to ten pounds of force occasionally (occasionally: activity or condition exists up to one-third of the time) and/or a negligible amount of force frequently (frequently: activity or condition exists from one-third to two-thirds of the time) to lift, carry, push, pull, or otherwise move objects. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.

{¶ 49} When reading the above definition for sedentary work, it must be remembered that a job is classified as "sedentary" provided that the job does not require a person to lift more than ten pounds of force occasionally and/or a negligible amount of force frequently to lift, carry, push, pull, or otherwise move objects. Not all sedentary jobs require a person to lift ten pounds of force occasionally; however, a job cannot be classified as sedentary if it requires one to exert more than ten pounds of force occasionally.

{¶ 50} In order for a job to be classified as sedentary, it is necessary that a person be able to occasionally lift one, two, three, four, five, six, seven, eight, nine or ten pounds of force occasionally and/or a negligible amount (less than one pound) frequently. Dr. Higgins opined that relator could lift up to five pounds with his right upper extremity.

This meets the first portion of the definition of sedentary work. Where, as here, relator was restricted to lifting no more than five pounds with his right upper extremity, he was limited to performing some sedentary work. Obviously, if a particular sedentary job required him to lift more than five pounds with his right upper extremity, relator would not be able to perform that particular sedentary job. However, there are sedentary jobs that do not require that one lift more than five pounds with their right upper extremity. As such, Dr. Higgins' five pound lifting restriction did not remove relator from being able to perform sedentary work.

{¶ 51} Dr. Higgins also indicated that relator avoid repetitive movements with his right arm. It appears that relator asserts that this restriction conflicts with the second portion of the definition requiring that one frequently lift a negligible amount of force. The magistrate disagrees.

{¶ 52} Frequent is defined in the Ohio Administrative Code as an activity that exists from one-third to two-thirds of the time. Repetitive is not defined in the Ohio Administrative Code but is defined in *Webster's Ninth New Collegiate Dictionary* 999 (1987) as follows: "repetitious" which is defined as "characterized or marked by repetition; esp: tediously repeating." Clearly, "frequent" and "repetitive" are not synonymous. Nothing in Dr. Higgins report indicates that relator cannot move a negligible amount of force frequently.

{¶ 53} Relator also points out that Dr. Higgins made the comment that he would be sitting most of the time and would be able to walk for a brief period of time. The magistrate finds that this restriction would fit within the definition of sedentary work. The fact that the SHO questioned why Dr. Higgins mentioned a limitation on his ability to sit and walk when his claim was only allowed for right upper extremity conditions is not a reason to remove that report from evidentiary consideration nor does it demonstrate that the SHO misunderstood the classification of the various physical demands of work.

{¶ 54} Relator's reliance on this court's decision in *State ex rel. Libecap v. Indus. Comm.*, 10th Dist. No. 96APD01-29, (Sept. 5, 1996), affirmed, 83 Ohio St.3d 178 (1998), is unfounded. In *State ex rel. Howard v. Millennium Inorganic Chems.*, 10th Dist. No. 03AP-637, 2004-Ohio-6603, ¶ 9-10, this court stated:

*Libecap* has been cited for the proposition that, "where a physician places the claimant generally in the sedentary category but has set forth functional capacities so limited that no sedentary work is really feasible * * * then the commission does not have discretion to conclude based on that report that the claimant can perform sustained remunerative work of a sedentary nature." *State ex rel. Owens Corning Fiberglass v. Indus. Comm.,* 10th Dist. No. 03AP-684, 2004-Ohio-3841, ¶ 56. The "commission cannot simply rely on a physician's 'bottom line' identification of an exertional category but must base its decision on the specific restrictions imposed by the physician in the body of the report." Ibid. The court in *Owens Corning* went on to explain:

In *Libecap,* the problem was not that the doctor's report was defective because claimant was placed in the sedentary category. Doctors may be unaware of legal criteria and the doctor in that case had set forth clear and unambiguous functional restrictions in his discussion that would permit short periods of sedentary activity. Rather, the problem was with the *commission's* finding of capacity for sedentary, sustained remunerative employment based on a report that, read in its entirety, clearly precluded sustained remunerative employment of a sedentary nature.

Conversely, where a physician's checklist states that the claimant is medically precluded from performing any sustained remunerative employment but where the narrative report, read in its entirety, clearly and unambiguously sets forth a capacity for sustained remunerative employment, then the commission lacks discretion to rely on that report for a finding of medical inability to perform any sustained remunerative employment.

Id. at ¶ 56-57. (Emphasis sic.)

"[F]unctional abilities may be so limited that only brief periods of work activities would be possible, which would not constitute sustained remunerative employment. * * * [That is,] regardless of the fact that the physician placed claimant in the 'sedentary' category, the specific restrictions [may be] so narrow as to preclude sustained remunerative employment." *State ex rel. Clevite Elastomers v. Torok,* 10th Dist. No. 02AP-116, 2002-Ohio-4770, ¶ 14.

{¶ 55} The problem found in *Libecap* is simply not present here. The restrictions in Dr. Higgins' report do not preclude an ability to perform sedentary work.

{¶ 56} Relator also criticizes the commission's handling of his rehabilitation efforts and his potential for rehabilitation arguing that, given his age of 57 years, his sixth grade education, his ability to read, write, and perform basic math, but not well, and the fact that he has been involved in construction type work his entire life leads to but one conclusion: he would not benefit from any vocational rehabilitation and he would not be able to learn new work. Relator argues that his situation is analogous to that of the claimant in *State ex rel. Soto v. Indus. Comm.,* 69 Ohio St.3d 146 (1994). For the reasons that follow, this magistrate disagrees.

{¶ 57} Antonio Soto sustained six work related injuries during the course of his employment as a refuse collector for the city of Lorain. His most severe injury was allowed for a tear of the right rotator cuff. Soto was educated in Puerto Rico, was literate in Spanish, but not in English, had a sixth or seventh grade education, and had only worked as a heavy laborer. Soto was restricted to sedentary employment and the commission concluded that he was not entitled to an award of PTD compensation.

{¶ 58} The commission conceded that its order denying PTD compensation violated the requirements of *Noll.* The Supreme Court of Ohio granted Soto relief pursuant to *Gay* after finding that, at best, Soto was limited to work that did not entail lifting his right arm above his waist. Finding that this restriction may be consistent with sedentary employment, the court noted that Soto's English illiteracy, his lack of school, and history as a heavy laborer were irreconcilable with opportunities for sedentary employment.

{¶ 59} Contrary to relator's assertions, the magistrate does not find that the facts of *Soto* are analogous here. Relator is ten years younger than Soto and is fluent in English. Further, the commission found that there was no indication that relator could not benefit from on-the-job training.

{¶ 60} The commission is free to conduct its own analysis of the non-medical disability factors without reference to, or reliance on, any other vocational evidence in the record. *State ex rel. Jackson v. Indus. Comm.*, 79 Ohio St.3d 266 (1997). Here, the commission acted as its own vocational expert and determined that relator could benefit

from on-the-job training and was not entitled to an award of PTD compensation. To the extent that even this portion of relator's argument relies on his assertion that the SHO improperly applied the classification of physical demands of work and found that he was capable of more than sedentary work, the magistrate has already rejected that argument.

{¶ 61} Based on the foregoing, it is this magistrate's decision that relator has not demonstrated that the commission abused its discretion in denying his application for PTD compensation and this court should deny relator's request for a writ of mandamus.

/S/ MAGISTRATE
STEPHANIE BISCA BROOKS

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).