[Cite as *State ex rel. Bales v. Indus. Comm.*, 2017-Ohio-947.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio ex rel. Bonnie S. Stallard Bales, | : | |
| | : | |
| Relator, | : | |
| | : | |
| v. | : | No. 15AP-418 |
| | : | |
| Industrial Commission of Ohio and Mid Ohio Home Health Ltd. Caring Hearts of Mid-Ohio, | | (REGULAR CALENDAR) |
| | : | |
| | : | |
| Respondents. | : | |
| | : | |

D E C I S I O N

Rendered on March 16, 2017

**On brief:** *Tarkowsky & Piper Co., L.P.A., John Tarkowsky* and *Gregory J. Tarkowsky,* for relator.

**On brief:** *Michael DeWine*, Attorney General, and *LaTawnda N. Moore,* for respondent, Industrial Commission of Ohio.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION
BRUNNER, J.

{¶ 1} Relator, Bonnie S. Stallard Bales ("Stallard Bales"), has filed this original action for a writ of mandamus ordering respondent, Industrial Commission of Ohio ("the commission"), to vacate its order denying her permanent total disability ("PTD") benefits and to grant her PTD benefits, or to return the claim to the commission for rehearing. Stallard Bales also requests costs, attorney fees, and other relief as the court deems proper.

{¶ 2} This Court referred the action to a magistrate pursuant to Civ.R. 53(C) and Loc.R. 13(M) of the Tenth District Court of Appeals. The magistrate issued the appended

No. 15AP-418

decision, including findings of fact and conclusions of law, and recommended that this Court deny Stallard Bales' request for a writ of mandamus.

{¶ 3} On December 3, 2015, Stallard Bales filed an objection to the magistrate's decision. The commission filed its memorandum contra Stallard Bales' objection on December 21, 2015.

{¶ 4} After reviewing the magistrate's decision, conducting an independent review of the record pursuant to Civ.R. 53, and giving due consideration to Stallard Bales' objection, we overrule Stallard Bales' objection and adopt the magistrate's findings of fact and conclusions of law as our own.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 5} Stallard Bales sustained a work injury on October 13, 2008, when she lifted a patient in her capacity as a home health aide while employed by Mid Ohio Home Health Ltd. Caring Hearts of Mid-Ohio. Her workers' compensation claim was allowed for sprain thoracic region; sprain lumbar region; sprain or strain right trapezius muscle; and substantial aggravation of pre-existing degenerative disc disease at the L4-S1 levels. The record indicates that Stallard Bales has not had any surgery for her allowed conditions and she is not a candidate for surgery. She has been awarded a 12 percent PPD award. Stallard Bales is currently 59 years old. She holds two Bachelor of Science degrees, one in education and the other in nursing, and has worked as a teacher and as a registered nurse. Stallard Bales last worked on January 9, 2009.

{¶ 6} On October 16, 2013, Stallard Bales underwent a functional capacity evaluation ("FCE") performed by physical therapist Steven Rau to determine whether she could return to her former position of employment as a home health nurse. Rau issued a report dated October 16, 2013, in which he noted Stallard Bales' abilities and strengths at that time. Rau also completed an FCE grid as part of his report. The FCE grid indicated that during the course of a normal eight-hour work day, Stallard Bales could occasionally (6-33 percent of the time) front carry 10 pounds, short carry 16 pounds, and right/left carry 10 pounds. Rau's report also indicated that Stallard Bales could perform both standing and sitting work, limiting standing to 10 continuous minutes and sitting to 20 continuous minutes.

{¶ 7} On September 26, 2014, Stallard Bales filed an application for total disability for her allowed conditions. In support of her application, she filed the March 4,

No. 15AP-418

2014 report of her treating physician, Michael R. Viau, M.D., who opined that Stallard Bales was permanently totally disabled "in regards to all sustained remunerative employment as a consequence of the allowed conditions in her claim only." (June 22, 2015 Stipulation of Evidence at 54.) Dr. Viau opined further that Stallard Bales was not a surgical candidate. Stallard Bales also filed Dr. Viau's report of April 23, 2014, which indicated his plan to request "a C-9 for vocational rehab to further verify whether or not she is employable in any fashion." *Id.* at 55.

{¶ 8} Stallard Bales also submitted the August 5, 2014 vocational report by Amy L. Corrigan, M.Ed. CRC. Corrigan noted referral information from Richard Ray, M.D., who opined that Stallard Bales had not reached maximum medical improvement ("MMI"). Corrigan also noted the FCE completed by Rau. Corrigan's report noted that Stallard Bales had skills that would transfer to sedentary employment and identified approximately 20 jobs within Stallard Bales' abilities. Corrigan's report listed barriers and assets to Stallard Bales' employment. No individualized rehabilitation plan was written, because the comprehensive vocational evaluation indicated that vocational services were not a feasible option for Stallard Bales; her vocational rehabilitation case file was thus closed. However, nothing in Corrigan's report indicated that Stallard Bales lacked the ability to be retrained for appropriate sedentary work.

{¶ 9} On November 19, 2014, Jon A. Elias, M.D., examined Stallard Bales. In a December 3, 2014 medical report, Dr. Elias identified Stallard Bales' allowed conditions and noted the history of her claim and her self-reported complaints reaching the following conclusions:

> 1. <u>If you believe the injured worker is still at MMI</u>, * * * provide the estimated percentage of whole person impairment arising from each allowed condition. * * * If there is no impairment for an allowed condition, indicate zero percent.
>
> In my opinion, the claimant remains at maximum medical improvement for the allowed conditions in this claim.
>
> In regards to the diagnosis of sprain or strain right trapezius muscle, there is no evidence of impairment from this condition at the time of this examination, no abnormalities were found with no spasm and no pain on palpation and no guarding. Therefore, this would be 0% whole person impairment.

Concerning sprain thoracic region, * * * her impairment is a DRE Category I for 0% whole person impairment.

Concerning the diagnosis of sprain lumbar region, substantial aggravation of preexisting degenerative disc disease at L4-S1 level, * * * this was found to be a DRE Category II and an 8% whole person impairment is awarded.

Using the American Medical Association's <u>Guides to the Evaluation of Permanent Impairment</u>, Fifth Edition, the entire whole person impairment awarded for the allowed condition is 8%.

2. <u>If you believe the injured worker is still at MMI</u>, complete the enclosed Physical Strength Rating. In your narrative report, provide a discussion setting forth physical limitations resulting from the allowed condition(s).

I believe [Stallard Bales] can perform sedentary type of work. Her physical examination findings, as well as the prior objective diagnostic findings indicate a low back condition that should allow a minimum of sedentary work. The fact that she is on medications further makes me feel that sedentary work should be the only work that she be performing at this time. I would give no other limitations.

*Id.* at 82-83.

{¶ 10} On March 2, 2015, a Staff Hearing Officer ("SHO") conducted a hearing on Stallard Bales' PTD application. The SHO denied Stallard Bales' request for PTD benefits in an order dated March 10, 2015. The SHO's decision was based on Dr. Elias' medical report and the SHO's findings that Stallard Bales' educational qualifications and other characteristics were positive factors to re-employment:

Based on the report of Dr. Elias, which is found persuasive, the [SHO] finds that [Stallard Bales] retains the physical functional capacity to perform sedentary work. When [Stallard Bales'] level of injury-related medical impairment is considered in conjunction with her non-medical disability factors, the [SHO] finds [Stallard Bales] has the capacity to perform sustained remunerative employment of a sedentary nature.

The [SHO] finds that [Stallard Bales'] current age of 57 is considered a neutral factor to re-employment, i.e., is not considered either positively or negatively. [Stallard Bales'] education is a positive factor to re-employment. The [SHO]

> notes that [Stallard Bales] has a Bachelor of Science degree in Education. Following attainment of that degree, [Stallard Bales] went on to participate in an accelerated nursing program in which she obtained her Bachelor of Science in Nursing degree. Per the information contained in the claim file, [Stallard Bales] graduated second in her class in the accelerated nursing program. The [SHO] finds that a college degree implies an above-average level of intelligence that would facilitate the acquisition of new skills that are conducive to sedentary work. It also suggests a measure of commitment, hard work, and discipline that prospective employers value. [Stallard Bales] had a vocational evaluation performed by Melessa Hunt, Ph.D. dated 01/05/2015. Although the [SHO] is not persuaded by the conclusion of Dr. Hunt that [Stallard Bales] is permanently and totally disabled from all sustained remunerative employment, the [SHO] does note that Dr. Hunt performed IQ testing. Dr. Hunt noted that [Stallard Bales] scored in the upper range of high average intellectual ability and Dr. Hunt noted that [Stallard Bales'] level of cognitive ability is a vocational strength, posing no significant barrier to employment. The [SHO] notes that [Stallard Bales'] past work history has involved work as a waitress, substitute teacher, and registered nurse.

*Id.* at 92.

{¶ 11} The SHO order also noted the limited aspect of the FCE performed by physical therapist Steven Rau, stating in pertinent part as follows:

> The last position performed by [Stallard Bales] was that of a registered nurse doing home health care. The [SHO] acknowledges that this job cannot be performed due to [Stallard Bales'] limitation of sedentary work. The [SHO] notes [Stallard Bales] had a [FCE] performed by Steven Rau, Physical Therapist, on 10/16/2013. The conclusion of Therapist Rau in that report was that [Stallard Bales] could not perform her former position of employment as a home health registered nurse. Given [Stallard Bales'] neutral age factor, as well as her high level of intelligence, and her proven ability to learn as noted by her high school diploma, and two separate bachelor degrees, the [SHO] finds that [Stallard Bales] would have the ability to perform sedentary work as [Stallard Bales] has the intellectual ability to be retrained.

*Id.*

{¶ 12} Stallard Bales filed a request for reconsideration with the commission on March 20, 2015. The commission denied her request by order mailed April 4, 2015.

No. 15AP-418

Stallard Bales then filed the instant complaint in mandamus on April 17, 2015. The magistrate's decision was rendered on November 24, 2015, and thereby, the magistrate recommended that this Court deny Stallard Bales' request for a writ of mandamus.

## II. OBJECTION TO THE MAGISTRATE'S DECISION

{¶ 13} Stallard Bales presents the following objection to the magistrate's decision:

> THE MAGISTRATE ERRED IN CONCLUDING THERAPIST RAU'S REPORT DID NOT CONTAIN RESTRICTIONS INCONSISTENT WITH THE DEFINITION OF SEDENTARY EMPLOYMENT.

## III. LAW AND DISCUSSION

{¶ 14} "Mandamus is an extraordinary writ that must be granted with caution." *State ex rel. Liberty Mills, Inc., v. Locker*, 22 Ohio St.3d 102 (1986). To be entitled to relief in mandamus, Stallard Bales must establish (1) that she a clear legal right to the relief prayed for, (2) that the commission is under a clear legal duty to perform the act requested, and (3) that she has no plain and adequate remedy in the ordinary course of law. *State ex rel. Berger v. McMonagle*, 6 Ohio St.3d 28 (1983). To do this, Stallard Bales must show that the commission abused its discretion "in this context, abuse of discretion has been repeatedly defined as a showing that the commission's decision was rendered without some evidence to support it." *State ex rel. Burley v. Coil Packing, Inc.*, 31 Ohio St.3d 18, 20 (1987).

{¶ 15} This Court may not determine that the commission abused its discretion when there is some evidence in the record to support the commission's finding. *State ex. rel. Miller v. Indus. Comm.*, 10th Dist. No. 13AP-418, 2014-Ohio-1742, citing *State ex rel. Rouch v. Eagle Tool & Mach. Co.*, 26 Ohio St.3d 197, 198 (1986). The some evidence standard "reflects the established principle that the commission is in the best position to determine the weight and credibility of the evidence and disputed facts." *Id.*, citing *State ex rel. Woolum v. Indus. Comm.*, 10th Dist. No. 02AP-780, 2003-Ohio-3336, ¶ 4, citing *State ex rel. Pavis v. Gen. Motors Corp., B.O.C. Group*, 65 Ohio St.3d 30, 33 (1992).

{¶ 16} Stallard Bales contends that the magistrate erred by finding that it was within the commission's discretion to determine if Stallard Bales was capable of sedentary employment based on the listed restrictions set forth in Rau's FCE report of October 16, 2013. Stallard Bales asserts that the commission relied on Rau's FCE in determining that

No. 15AP-418

Stallard Bales was incapable of returning to her former position of employment. Stallard Bales argues that Rau's findings that she had a sitting tolerance of 20 continuous minutes and a standing tolerance of 10 continuous minutes indicate that she is incapable of performing sedentary work as defined in Ohio Adm.Code 4121-3-34. Stallard Bales argues, "the Magistrate erred in finding that the Commission had the discretion to determine that [Stallard Bales] was not PTD, when the Commission relied upon a report which unequivocally contains restrictions inconsistent with the definition of sedentary employment." (Dec. 3, 2015 Stallard Bales Objs. to Mag.'s Decision at 5.)

{¶ 17} Ohio Adm.Code 4121-3-34(B)(2)(a) defines sedentary work as follows:

> "Sedentary work" means exerting up to ten pounds of force occasionally (occasionally: activity or condition exists up to one-third of the time) and/or a negligible amount of force frequently (frequently: activity or condition exists from one-third to two-thirds of the time) to lift, carry, push, pull, or otherwise move objects. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.

{¶ 18} The magistrate focused on the relevant inquiry of a PTD determination as being whether a claimant has the ability to do any sustained remunerative employment. *State ex rel. Domjancic v. Indus. Comm.*, 69 Ohio St.3d 693 (1994):

> The crux of [Stallard Bales'] argument is that, according to the FCE performed by Therapist Rau, she is not capable of performing a full range of sedentary employment. As such [Stallard Bales] asserts that the commission abused its discretion when it found that she was not permanently and totally disabled and was able to perform sedentary work. [Stallard Bales] asserts that, inasmuch as, according to the FCE, she is only able to sit for 20 continuous minutes, as a matter of law, her restrictions do not place her in the sedentary category.

(App'x at ¶ 43.) In reliance on *Domjancic*, this Court has held that "[a]n individual can engage in sustained remunerative employment if they [sic] can perform sedentary work." *State ex rel. Miller* at ¶ 10.

{¶ 19} The magistrate noted that Stallard Bales cited *State ex rel. Libecap v. Indus. Comm.*, 10th Dist. No. 96APD01-29 (Sept. 5, 1996); *affirmed* 83 Ohio St.3d 178, in

No. 15AP-418

support of her argument. The magistrate reviewed the *Libecap* holding and discussed subsequent decisions of the Supreme Court of Ohio that limit *Libecap*'s application under similar circumstances where a claimant argued that the commission abused its discretion in denying PTD:

> In the time since this court issued its decision in Libecap, the Ohio Supreme Court has released other decisions which affect this court's treatment of [Stallard Bales'] allegation that the commission abused its discretion. In State ex rel. Toth v. Indus. Comm., 80 Ohio St.3d 360 (1997), the Supreme Court considered whether or not part-time work constituted sustained remunerative employment for purposes of PTD compensation and concluded that it did. In State ex rel. DeSalvo v. May Co., 88 Ohio St.3d 231 (2000), the court indicated that, where a claimant is capable of working more than four hours per day by combining their abilities to sit, stand and walk, the commission may find that the worker is capable of sustained remunerative employment. Based upon these cases, certain principles emerge. First, sustained remunerative employment includes part-time work. Second, where a claimant can perform a work activity but only for a very limited amount of time (such as less than three or four hours per day), the commission may conclude that the claimant is permanently and totally disabled. However, where the claimant is capable of working more than four hours per day by combining their abilities to sit, stand and walk, the commission may find that the worker is capable of sustained remunerative employment.

> In the present case, the commission relied on the medical report of Dr. Elias who opined [Stallard Bales] could perform sedentary work. Contrary to [Stallard Bales'] assertions, Dr. Elias never limited her to 30 minutes of continuous sitting and 20 minutes of continuous standing. Instead, Dr. Elias noted that relator "self-reported" these restrictions. As such, Dr. Elias' report does not even contain a Libecap-type contradiction. Further, even if Therapist Rau was correct in limiting [Stallard Bales'] ability to continually sit and stand, the case law which followed Libecap, finding that part-time work constitutes sustained remunerative employment, gives the commission the discretion to determine that relator was not permanently and totally disabled.

(App'x at ¶ 46-47.)

{¶ 20} The record indicates that the commission relied on Dr. Elias' medical report, not on Rau's FCE, in determining that Stallard Bales is capable of performing sustained remunerative employment at the sedentary level. The only reference the commission made to Rau's report was the SHO's acknowledgement that Stallard Bales had an FCE performed by Rau, who had concluded in his report only that Stallard Bales could not perform her former position of employment as a home health registered nurse.

{¶ 21} In the context of workers' compensation claims, Ohio Adm.Code 4121-3-34(C)(1) provides:

> Each application for permanent total disability shall identify, if already on file, or be accompanied by medical evidence from a physician, or a psychologist or a psychiatric specialist in a claim that has been allowed for a psychiatric or psychological condition, that supports an application for permanent total disability compensation. * * * The medical evidence used to support an application for permanent total disability compensation is to provide an opinion that addresses the injured worker's physical and/or mental limitations resulting from the allowed conditions in the claim(s). Medical evidence which provides an opinion addressing such limitations, but which also contains a conclusion as to whether an injured worker is permanently and totally disabled, may be considered by a hearing officer. A vocational expert's opinion, by itself, is insufficient to support an application for permanent total disability compensation.

{¶ 22} Stallard Bales contends that Rau's findings as set forth in the October 16, 2013 FCE supersede Dr. Elias' findings as set forth in his December 3, 2014 medical report. Ohio Adm.Code 4121-3-34(C)(1) requires that an application for PTD compensation be accompanied by medical evidence from a physician, psychologist, or a psychiatric specialist; the rule even contains a reference to opinion from a vocational expert. The rule does not, however, mention evidence or opinion from a physical therapist. Consequently, the argument that Rau's findings control the commission's consideration of Stallard Bales' request for PTD compensation is not viable.

## IV. CONCLUSION

{¶ 23} Upon review of the magistrate's decision, an independent review of the record, and due consideration of Stallard Bales' objection, we find the magistrate has properly stated the pertinent facts and applied the appropriate law. Therefore, we

No. 15AP-418

overrule Stallard Bales' objection to the magistrate's decision and adopt the decision as our own, including the findings of facts and conclusions of law therein, and in accordance with the magistrate's decision, the requested writ of mandamus is denied.

*Objection overruled;*
*petition for writ of mandamus denied.*

TYACK, P.J., and DORRIAN, J., concur.

———————————

No. 15AP-418

<u>APPENDIX</u>

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio ex rel.                          :
Bonnie S. Stallard Bales,

                                               :

         Relator,

                                               :

v.                                                            No.  15AP-418

                                               :

Industrial Commission of Ohio and                             (REGULAR CALENDAR)
Mid Ohio Home Health Ltd.                      :
Caring Hearts of Mid-Ohio,

                                               :

         Respondents.

                                               :

---

M A G I S T R A T E ' S   D E C I S I O N

Rendered on November 24, 2015

---

*Tarkowsky & Piper Co., L.P.A., John Tarkowsky* and *Gregory J. Tarkowsky,* for relator.

*Michael DeWine,* Attorney General, and *LaTawnda N. Moore,* for respondent Industrial Commission of Ohio.

---

IN MANDAMUS

{¶ 24} Relator, Bonnie S. Stallard Bales, has filed this original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order which denied relator's application for permanent total disability ("PTD") compensation, and ordering the commission to find that she is entitled to that compensation.

No. 15AP-418

Findings of Fact:

{¶ 25} 1. Relator sustained a work-related injury on October 13, 2008 and her workers' compensation claim has been allowed for the following conditions:

> SPRAIN THORACIC REGION/ SPRAIN LUMBAR REGION;
> SPRAIN OR STRAIN RIGHT TRAPEZIUS MUSCLE;
> SUBSTANTIAL AGGRAVATION OF PRE-EXISTING
> DEGENERATIVE DISC DISEASE AT L4-S1 LEVEL.

{¶ 26} 2. Relator has not returned to work since, and has been awarded a 12 percent permanent partial disability award. Relator has not undergone any surgeries for her allowed conditions.

{¶ 27} 3. A functional capacity evaluation ("FCE") was performed by physical therapist, Steven Rau. In the report, dated October 16, 2013, Rau noted relator had the following abilities/strengths:

> [One] Demonstrates standing tolerance of 10 continuous minutes.
> [Two] Demonstrates stair climbing of 20 steps with the use of hand rails on both sides.
> [Three] Shows average right and left hand coordination.
> [Four] Waist to crown lift with hands on handles maximum 10 lbs.
> [Five] Waist to crown lift with hand preferred method 14 lbs.
> [Six] Front carry maximum 14 lbs.
> [Seven] Short carry maximum 20 lbs.
> [Eight] Right and left hand carry maximum of 12 lbs.
> [Nine] Lifting capacity in general is low.
>
> Rau further listed the following limitations:
>
> [One] Unable to perform squat or crouch.
> [Two] Unable to perform step ladder climbing.
> [Three] Right hand grip 41 lbs. and left hand grip 39 lbs.
> [Four] Walking tolerance significantly limited to 260 yds. in 6 minutes.
> [Five] Elevated work tolerance significantly limited.
> [Six] Sitting tolerance limited to 20 continuous minutes.
> [Seven] Standing tolerance limited to 10 continuous minutes.
> [Eight] Cannot perform floor to waist lift.
> [Nine] Lifting capacity in general is low.

No. 15AP-418

{¶ 28} Therapist Rau also completed an FCE grid as part of his report. On that grid, Rau indicated that, during the course of a normal 8-hour work day, relator could occasionally (6-33%) front carry 10 pounds, short carry 16 pounds, and right/left carry 10 pounds. Rau also indicated that relator could occasionally perform both standing and sitting work, limiting standing to 10 continuous minutes and sitting to 20 continuous minutes.

{¶ 29} 4. On September 26, 2014, relator filed her application for PTD compensation. On her application, relator indicated that she had filed for Social Security Disability benefits, but did not indicate whether or not she was receiving those benefits or the amount of those benefits. Relator attended post-graduate school, could read, write, and perform basic math, and was not using any special appliance or device. According to her work history, relator had worked as a teacher and as a registered nurse.

{¶ 30} 5. Relator's application was supported by the March 4, 2014 report of her treating physician Michael R. Viau, M.D., who stated:

> Ms. Stallard Bales was seen by myself on 12-10-08 after sustaining an injury on 11-13-08 when she was a home health aide and was lifting a patient that weighed 170 lb plus multiple times developing significant pain in the lower back and buttocks with an initial diagnosis of sprain/strain thoracic and lumbar spine but also aggravation of pre-existing DDD particularly at the L4-S1 levels. She has undergone a multitude of conservative measures including pain management, therapy and various medications all of which have been of minimal benefit. She was last seen in my office on 01-17-14 with her last MRI done 07-08-11 actually showing in addition to DDD L4-L5 and L5-S1.
>
> On examination she had marked restriction with lumbar flexion, paraspinal spasm and rated her pain as 5/10 at the least and 10/10 at the worst which she described as an aching, burning sensation in her back only.
>
> It is in my opinion that Ms. Stallard Bales condition is permanent and I also feel that she is permanently totally disabled in regards to all sustained remunerative employment as a consequence of the allowed conditions in her claim only.

No. 15AP-418

> I date her as permanently disabled as of 02-10-14. Should be noted that she still sees a pain management physician and also in my opinion she is not a surgical candidate.

{¶ 31} 6. Relator also submitted records concerning her participation in vocational rehabilitation. Relator included the August 15, 2014 vocational report of Amy L. Corrigan, M.Ed., CRC. In her report, Corrigan indicated that relator was referred for a comprehensible vocational evaluation on July 16, 2014. Corrigan relied on the medical report of Richard Ray, M.D., who opined relator had not reached maximum medical improvement and the FCE prepared by Therapist Rau who only considered whether relator could return to her former position of employment. Corrigan listed the following barriers to employment:

> There are barriers that should be addressed or considered while Sue pursues new employment. She does not have competitive computer literacy skills, suggesting reduced options for sedentary work roles (especially in business or administrative/office environments). Also, she has a current lengthy work gap (5 1/2 + years), significant work restrictions (sedentary demand), unrelated medical conditions that may affect re-employment strategies (blood pressure, diabetes, mood/depression), a rather narrow labor-intensive or higher-risk employment background (medical/patient care), and a higher than average wage history ($21.50 hourly). Practical barriers to work may include disability adjustment issues, Sue's transportation limits (no current driver's license or vehicle), her consideration of a part-time work schedule (potentially reducing job options), her eligibility/receipt of social security benefits (posing a possible distraction to job search and/or deliberation of job opportunities), and her limited career ideas/job goals or knowledge of the labor market outside familiar fields.

> Corrigan also listed the following assets to employment:

> Considering work experience, education, and individual presentation, Sue has the following employable skills or attributes: a high school diploma (1976); rudimentary computer sells (Internet/email); a Bachelor of Science degree in Education (1989) with history of a teacher's license and seven years' [sic] pubic school experience (1990 to 1997) as a substitute school teacher (Richland County Board of Education); medical training (1997 to 1999) and certification/diploma as a registered nurse (RN) with nearly

No. 15AP-418

> ten years' [sic] experience (1999 to 2008) as a home health and CCU nurse (Mid Ohio Home Health, Miami Valley Hospital); remote customer service/restaurant experience (Mark Pi's, Brocks); and a serious, focused personality with good verbal skills.

{¶ 32} Corrigan noted that relator had skills which would transfer to sedentary employment and identified approximately 20 jobs which were within her abilities.

> Corrigan noted the following employment expectations:

> To identify Sue's perspective of the current labor market and personal vocational agenda, the vocational questionnaire included employment expectation information. She did not identify whether she was interested in full- or part-time employment, relating this to concerns about her physical capacity. Sue did not clarify wage expectations or shift preferences. She currently receives no income, reporting her previous income of $1100 biweekly in Worker's Compensation Temporary Total (TT) benefits ended in February 2014 when MMI was determined. Sue was also receiving $800 per month in Social Security Disability Insurance (SSDI) benefits until an overpayment was made. She now receives no SSDI income until the overpayment is repaid. Sue said she has been living on her savings since February 2014, and she claims she is almost out of money. She denies having additional sources of income (i.e., no Supplemental Security Income (SSI), disability pension or retirement benefits). Sue has medical coverage that she pays "out of pocket" $345 quarterly plus $100 Medigold (dental). Geographic search areas for job placement were not identified. She does not have a valid driver's license or a car, noting her license expired in 2010. Sue indicated she let her driver's license expire because she felt her pain was too distracting to make her a safe driver.

{¶ 33} Ultimately, no individualized rehabilitation plan was written and relator's rehabilitation case file was closed based upon a finding that she was not feasible due to her physical restrictions.

{¶ 34} 7. Relator was examined by Jon A. Elias, M.D. In his December 3, 2014 report, Dr. Elias identified the allowed conditions in relator's claim, noted the history of her claim, as well as the following self-reported complaints as indicated by relator:

> She can ambulate without assistive devices but does have pain with distance. She denies any weakness to any of her

No. 15AP-418

lower extremities. She states that her pain is greatest to the right lumbar area. Her pain becomes more significant when sitting for long periods of time and standing.

* * * She states that she does not drive but can perform her ADLs appropriately. She lives in a house with her oldest daughter. She does not perform any yard work at this time. She can perform light housework. She states she does about 20 minutes of work at a time.

She can sit for about 30 minutes and stand about 20 minutes at a time. She states she can do limited walking. She rarely leaves the house. In fact, she does a lot of reading at home. She can no longer go on walks. She used to do some sporting activities such as skiing, which she can no longer perform. She used to do a lot of gardening.

{¶ 35} After providing his physical findings upon examination, Dr. Elias opined that relator had an eight percent whole person impairment and that she was able to perform sedentary work, stating:

I believe the claimant can perform sedentary type of work. Her physical examination findings, as well as the prior objective diagnostic findings indicate a low back condition that should allow a minimum of sedentary work. The fact that she is on medications further makes me feel that sedentary work should be the only work that she be performing at this time. I would give no other limitations.

{¶ 36} 8. Relator's application for PTD compensation was heard before a staff hearing officer ("SHO") on March 2, 2015. The SHO relied on the December 3, 2014 report of Dr. Elias to find that relator was capable of performing sedentary work. Thereafter, the SHO found that relator's current age of 57 years was a neutral factor while her education and work history were both positive factors. To the extent that the SHO discussed the FCE performed by Therapist Rau, the SHO only noted that, according to his evaluation, relator could not return to her former position of employment as a home health registered nurse. Specifically, the SHO addressed the non-medical disability factors:

The Staff Hearing Officer finds that the Injured Worker's current age of 57 is considered a neutral factor to re-employment, i.e., is not considered either positively or

No. 15AP-418

negatively. The Injured Worker's education is a positive factor to re-employment. The Staff Hearing Officer notes that the Injured Worker has a Bachelor of Science degree in Education. Following attainment of that degree, the Injured Worker went on to participate in an accelerated nursing program in which she obtained her Bachelor of Science in Nursing degree. Per the information contained in the claim file, the Injured Worker graduated second in her class in the accelerated nursing program. The Staff Hearing Officer finds that a college degree implies an above-average level of intelligence that would facilitate the acquisition of new skills that are conducive to sedentary work. It also suggests a measure of commitment, hard work, and discipline that prospective employers value. The Injured Worker had a vocational evaluation performed by Meleesa Hunt, Ph.D. dated 01/05/2015. Although the Staff Hearing Officer is not persuaded by the conclusion of Dr. Hunt that the Injured Worker is permanently and totally disabled from all sustained remunerative employment, the Staff Hearing Officer does note that Dr. Hunt performed IQ testing. Dr. Hunt noted that the Injured Worker scored in the upper range of high average intellectual ability and Dr. Hunt noted that the Injured Worker's level of cognitive ability is a vocational strength, posing no significant barrier to employment. The Staff Hearing Officer notes that the Injured Worker's past work history has involved work as a waitress, substitute teacher, and registered nurse. The last position performed by the Injured Worker was that of a registered nurse doing home health care. The Staff Hearing Officer acknowledges that this job cannot be performed due to the Injured Worker's limitation of sedentary work. The Staff Hearing Officer notes that the Injured Worker had a Functional Capacity Evaluation performed by Steve Rau, Physical Therapist, on 10/16/2013. The conclusion of Therapist Rau in that report was that the Injured Worker could not perform her former position of employment as a home health registered nurse. Given the Injured Worker's neutral age factor, as well as her high level of intelligence, and her proven ability to learn as noted by her high school diploma, and two separate bachelor degrees, the Staff Hearing Officer finds that the Injured Worker would have the ability to perform sedentary work as the Injured Worker has the intellectual ability to be retrained. The Staff Hearing Officer finds that the Injured Worker's high school education alone generally implies that an Injured Worker has the intellectual capacity to undergo additional short term academic retraining, and also to intellectually complete an

extensive on-the-job training program for semi-skilled work. The Injured Worker's education however is even beyond that of high school. The vocational evaluation performed by Amy Corrigan, M.Ed., CRC, vocational evaluation specialist identified many potential jobs in the medical field that were sedentary in nature and that could be performed with skill enhancement or on-the-job training for some of the more specialized fields. However, those jobs such as medical secretary or a dispatcher for emergency services or medical admitting clerk are sedentary in nature and could make use of the Injured Worker's background education in nursing and could be performed with some skill enhancement or on-the-job training.

* * *

The Staff Hearing Officer therefore finds that the Injured Worker retains the physical functional capacity to perform sedentary work based solely on the allowed conditions in this claim, which Dr. Elias indicated resulted in only an 8% whole person impairment. The Staff Hearing Officer finds that given the Injured Worker's neutral age of 57, as well as her college education with a high average intellectual ability, the Injured Worker is capable of performing sedentary work and has the intelligence to complete any on-the-job training for sedentary work. As such, the Injured Worker's IC-2 application filed 09/26/2014 is denied.

{¶ 37} 9. Relator's request for reconsideration was denied by order of commission mailed April 4, 2015.

{¶ 38} 10. Thereafter, relator filed the instant mandamus action in this court.

Conclusions of Law:

{¶ 39} For the reasons that follow, it is this magistrate's decision that this court should deny relator's request for a writ of mandamus.

{¶ 40} The Supreme Court of Ohio has set forth three requirements which must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law. *State ex rel. Berger v. McMonagle*, 6 Ohio St.3d 28 (1983).

{¶ 41} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. *State ex rel.*

*Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987). Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

{¶ 42} The relevant inquiry in a determination of permanent total disability is claimant's ability to do any sustained remunerative employment. *State ex rel. Domjancic v. Indus. Comm.*, 69 Ohio St.3d 693 (1994). Generally, in making this determination, the commission must consider not only medical impairments but also the claimant's age, education, work record and other relevant non-medical factors. *State ex rel. Stephenson v. Indus. Comm.*, 31 Ohio St.3d 167 (1987). Thus, a claimant's medical capacity to work is not dispositive if the claimant's non-medical factors foreclose employability. *State ex rel. Gay v. Mihm*, 68 Ohio St.3d 315 (1994). The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. *State ex rel. Noll v. Indus. Comm.*, 57 Ohio St.3d 203 (1991).

{¶ 43} The crux of relator's argument is that, according to the FCE performed by Therapist Rau, she is not capable of performing a full range of sedentary employment. As such, relator asserts that the commission abused its discretion when it found that she was not permanently and totally disabled and was able to perform sedentary work. Relator asserts that, inasmuch as, according to the FCE, she is only able to sit for 20 continuous minutes, as a matter of law, her restrictions do not place her in the sedentary category.

{¶ 44} Relator cites *State ex rel. Libecap v. Indus. Comm.*, 83 Ohio St.3d 178 (1998), in support of her argument.

{¶ 45} In *Libecap,* the claimant had worked as a waitress and a bus driver and her claims had been allowed for numerous physical conditions as well as dysthymic disorder. In his report regarding her allowed psychological conditions, Dr. Bonds failed to clearly address the primary issue of the effect of her emotional conditions upon her ability to be

No. 15AP-418

retrained.  With regard to the allowed physical conditions, the commission found the claimant medically capable of sustained remunerative employment at the sedentary level, relying upon the medical report of Dr. Littlefield who stated that claimant could sit for no more than 30 minutes at a time.  In mandamus, this court found that the commission abused its discretion in determining that claimant had the medical capacity to perform sedentary work because such work requires sitting most of the time and the commission had accepted that claimant could not sit for more than 30 minutes at a time.  Therefore, regardless of the fact that the physician had placed the claimant in the "sedentary" category, this court found that the specific restrictions were so narrow as to preclude sustained remunerative employment.  Relator argues that the same is true in the present case.

{¶ 46}  In the time since this court issued its decision in *Libecap,* the Ohio Supreme Court has released other decisions which affect this court's treatment of relator's allegation that the commission abused its discretion.  In *State ex rel. Toth v. Indus. Comm.,* 80 Ohio St.3d 360 (1997), the Supreme Court considered whether or not part-time work constituted sustained remunerative employment for purposes of PTD compensation and concluded that it did.  In *State ex rel. DeSalvo v. May Co.,* 88 Ohio St.3d 231 (2000), the court indicated that, where a claimant is capable of working more than four hours per day by combining their abilities to sit, stand and walk, the commission may find that the worker is capable of sustained remunerative employment. Based upon these cases, certain principles emerge.  First, sustained remunerative employment includes part-time work.  Second, where a claimant can perform a work activity but only for a very limited amount of time (such as less than three or four hours per day), the commission may conclude that the claimant is permanently and totally disabled.  However, where the claimant is capable of working more than four hours per day by combining their abilities to sit, stand and walk, the commission may find that the worker is capable of sustained remunerative employment.

{¶ 47}  In the present case, the commission relied on the medical report of Dr. Elias who opined relator could perform sedentary work.  Contrary to relator's assertions, Dr. Elias never limited her to 30 minutes of continuous sitting and 20 minutes of continuous standing.  Instead, Dr. Elias noted that relator "self-reported" these restrictions.  As such,

No. 15AP-418

Dr. Elias' report does not even contain a *Libecap*-type contradiction. Further, even if Therapist Rau was correct in limiting relator's ability to continually sit and stand, the case law which followed *Libecap,* finding that part-time work constitutes sustained remunerative employment, gives the commission the discretion to determine that relator was not permanently and totally disabled.

{¶ 48} Relator also argues that the commission abused its discretion when it determined that she had the ability to be retrained to perform sedentary work. Relator asserts that it has already been determined that she is not able to be retrained.

{¶ 49} In stating that there is vocational evidence in the record that she is not able to be retrained, relator points to the August 15, 2014 vocational assessment. As noted in the findings of fact, no individualized rehabilitation plan was ever written. Her vocational rehabilitation case was closed due to her physical restrictions based on a medical report upon which the commission did not rely. A review of that report reveals that more than 20 occupations were identified as possible for someone with relator's training and abilities. However, nothing in that report indicates that relator lacks the ability to be retrained. To the extent that relator asserts that the commission abused its discretion when it failed to discuss the vocational closure report (asserting that the closure report indicates that she cannot be retrained), relator's argument is simply not well-taken. The vocational report lacks any statement regarding whether or not relator was actually suitable for retraining.

{¶ 50} Based on the foregoing, it is this magistrate's decision that relator has not demonstrated that the commission abused its discretion when it denied her application for PTD compensation and this court should deny her request for a writ of mandamus.

/S/ MAGISTRATE
STEPHANIE BISCA

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically

No. 15AP-418

> **objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).**